**KENTUCKY BAR ASSOCIATION,
Complainant,**

v.

**Jimmy M. HAMMOND, Respondent.**

Supreme Court of Kentucky.

April 14, 1981.

Rehearing Denied May 26, 1981.

Leslie G. Whitmer, Director, Michael M. Hooper, Asst. Director, Kentucky Bar Ass'n, Frankfort, for complainant.

Jimmy M. Hammond, Prestonsburg, pro se.

## OPINION OF THE COURT *

This is a disciplinary proceeding. Respondent is a practicing attorney of the Kentucky Bar, with offices in Prestonsburg, Kentucky, actively engaged in the prosecution of workers' compensation claims. On July 15, 1977, and again on April 25, 1978, the Inquiry Tribunal of the Kentucky Bar Association issued charges against respondent of unethical and unprofessional conduct, bringing the bench and bar of Kentucky into disrepute.

The July 15, 1977, charges are as follows:

"I. On or about February 16, 1976, respondent as lawyer for one Fred Jarrell, a plaintiff before the Kentucky Workmen's Compensation Board, had chest PA and lateral x-rays taken at Our Lady of the Way Hospital submitted to Dr. Richard P. O'Neill, M.D., Associate Professor of Medicine, University of Kentucky Medical Center, for initial review. Appended hereto, made a part hereof, and marked as 'Exhibit # 1' is a true and correct copy of Dr. O'Neill's report on said x-rays dated February 16, 1976, indicating 'bilateral reticulo nodular infiltrate consistent with coal worker's pneumoconiosis, simple stage 1/1 (p and q).' Consistent with customary procedures between respondent and Dr. O'Neill, such a positive finding from 'outside' x-rays warranted Jarrell's efforts to appear in Dr. O'Neill's office for further examination. On or about June 7, 1976, Jarrell was examined by Dr. O'Neill. Appended hereto, made a part hereof, and marked as 'Exhibit # 2' is a true and correct copy of Dr. O'Neill's medical report dictated on June 12, 1976, resulting from the in-person examination showing no finding of silicosis and/or pneumoconiosis.

On or about March 3, 1977, respondent caused to be prepared and delivered to Francis, Kazee & Francis, Attorneys at Law, 130 Court Street, Prestonsburg, Kentucky, counsel for defendant Floyd County Fiscal Court, a false and fraudulent medical report, appended hereto, made a part hereof, and marked as 'Exhibit # 3', purportedly prepared and signed by Dr. O'Neill showing alterations made by respondent, or at his direction, which include a finding of '3. Silicosis and/or pneumoconiosis, simple, stage 1/1 (p and q).' A true and correct copy of a cover letter to the Francis law firm dated March 3, 1977, submitting the false and fraudulent medical report to the firm is appended hereto, made a part hereof, and

---

* Justices Stephenson and Aker, having declared themselves disqualified, did not participate in the consideration of this case, and were replaced by Hon. Billy R. Paxton and Hon. Caswell P. Lane, serving circuit judges. They were appointed to serve as Special Justices by the Governor pursuant to Ky.Const. Sec. 110(3).

marked as 'Exhibit # 4.' The purported signature of Dr. O'Neill on 'Exhibit # 3' is not the signature placed thereon at his direction nor was it authorized to be placed there by him nor were the above changes in 'Exhibit # 3' done at his direction nor authorized by him.

II. On or about June 7, 1976, respondent as lawyer for one Monroe Adams, a plaintiff before the Kentucky Workmen's Compensation Board, had his client examined by Dr. Richard P. O'Neill, M.D., Associate Professor of Medicine, University of Kentucky Medical Center, for one physical examination. Appended hereto, made a part hereof, and marked as 'Exhibit # 5' is a true and correct copy of a false and fraudulent medical report prepared or caused to be prepared by respondent containing, among other alterations in Dr. O'Neill's true finding, a finding of '3. Pneumoconiosis and/or silicosis, simple, stage 1/1 (p and q).' The purported signature of Dr. O'Neill on 'Exhibit # 5' is not the signature of Dr. O'Neill nor was said signature placed thereon at his direction nor was it authorized to be placed there by him nor were the above changes in 'Exhibit # 5' done at his direction nor authorized by him.

On or about February 4, 1977, respondent caused to be delivered to Francis, Kazee & Francis, Attorneys at Law, 130 Court Street, Prestonsburg, Kentucky, counsel for defendant Floyd County Fiscal Court, the false and fraudulent medical report marked 'Exhibit # 5'. A true and correct copy of a cover letter to the Francis law firm dated February 4, 1977, submitting said false and fraudulent medical report to the law firm is appended hereto, made a part hereof and marked as 'Exhibit # 6.'

The April 25, 1978, charge grew out of an altercation that respondent had with two arresting officers, originating when he was stopped for speeding. Although the charge was proven, the Board of Governors of the Kentucky Bar Association, by a vote of 0–12, with one member abstaining, found respondent not guilty under the April 25, 1978, charge. SCR 3.370, in effect at the time of the commission of the April 25, 1978, offense, necessitates its dismissal. Consequently, we need not discuss it any further.

On May 13, 1980, the Trial Committee submitted its report to the Board of Governors of the Kentucky Bar Association. It unanimously found that: (1) respondent was guilty of the July 15, 1977, charges and recommended that he be disbarred; and (2) he was guilty of the April 25, 1978, charge; however, his conduct attendant thereto did not constitute unprofessional conduct and recommended that this charge be dismissed. The Board of Governors followed the recommendation of the Trial Committee and recommended to this court that respondent be found guilty of the July 15, 1977, charges and that he be disbarred from the practice of law in the Commonwealth of Kentucky.

In due time the clerk of this court issued a rule against respondent ordering him to show cause why he should not be disbarred. Briefs were duly filed, and in due time the matter was submitted to this court for consideration.

The record in this proceeding is quite voluminous. There are six volumes of a typewritten transcript of testimony, consisting of 940 pages and 41 exhibits.

The respondent denies the charges made against him. He states that what he did was customary among practitioners in his area and that the evidence vindicates him.

The transcript of testimony reveals, and this court, from a study of the whole record, is entitled to and does find that respondent is guilty of such unethical and unprofessional conduct that unquestionably would bring the bench and bar into disrepute.

### Fred Jarrell Action

Jarrell claimed to have been suffering from pulmonary difficulties of such severity that he was entitled to workers' compensation. X-rays were made at Our Lady of the Way Hospital, in Martin, Kentucky, on February 16, 1976, and furnished by the respondent to Dr. Richard P. O'Neill, of Lexington, Kentucky, for his reading and evalua-

tion. Dr. O'Neill is an associate professor of medicine at the University of Kentucky and is a nationally recognized authority on pulmonary medicine. The February 16, 1976, x-rays were read by Dr. O'Neill, who reported to respondent that it was his impression that Jarrell had bilateral reticulo nodular infiltrate consistent with coal worker's pneumoconiosis, simple, stage 1/1 (p and q). Having received such a report, respondent caused Jarrell to go to Dr. O'Neill on June 7, 1976, for a pulmonary function study, which consists of x-rays and a physical examination. Jarrell was x-rayed at the University of Kentucky hospital and was given a physical examination by Dr. O'Neill. The x-rays, as well as the physical examination, failed to show any signs of silicosis or pneumoconiosis. The report did show, and the doctor found, Jarrell's lungs to be free of infiltrative lesions. This report reflected a different finding to that made of the February 16, 1976, x-rays.

Without the consent of Dr. O'Neill, the respondent, in person, or his secretary, pursuant to respondent's direction, prepared a new and different report from that furnished to him by Dr. O'Neill of the June 7, 1976, study. In preparing the new report, the findings of Dr. O'Neill that Jarrell's lungs were free of infiltrative lesions and his impression of normal chest were removed and, in place thereof, the following was inserted: "The lung fields show a bilateral reticulo nodular infiltrate in the mid and lower lung zones. Impression: Bilateral reticulo nodular infiltrate consistent with silicosis and/or pneumoconiosis, simple, stage 1/1 (p and q)." There was also added to Dr. O'Neill's report a third diagnosis, to-wit: "3. Silicosis and/or pneumoconiosis, simple, stage 1/1 (p and q)." The changed medical report was furnished by respondent to the law firm of Francis, Kazee & Francis under the representation that it was a true and correct copy of Dr. O'Neill's report of his June 7, 1976, evaluation, which it was not. The respondent, through access to Dr. O'Neill's files and unbeknown to Dr. O'Neill, switched the altered report in Dr. O'Neill's file for the original report, and Dr. O'Neill's name was forged to the fraudulent report. This conduct of the respondent was nothing less than fraud.

### Monroe Adams Action

Adams claimed to have been suffering from pulmonary difficulties of such severity that he was entitled to workers' compensation. X-rays of Adams were made at Our Lady of the Way Hospital, in Martin, Kentucky, on July 19, 1976, and were furnished by respondent to Dr. Richard P. O'Neill for his reading and evaluation. These x-rays were read by Dr. O'Neill who verbally reported to respondent that the x-rays indicated the presence of silicosis. Respondent or his secretary, pursuant to respondent's direction, prepared a report purporting to be the official report of Dr. O'Neill and expressed the impression that Adams had "Bilateral reticulonodular infiltrate consistent with coal worker's pneumoconiosis, simple, stage 1/1 (p and q)." This report was neither read to Dr. O'Neill nor was it approved by him. A copy was furnished by respondent to the law firm of Francis, Kazee & Francis. As customary and acting upon such a report, respondent caused Adams to undergo a pulmonary function study. On June 7, 1976, Adams was x-rayed at the University of Kentucky hospital and underwent a physical examination by Dr. O'Neill. As a result of this examination and a reading of the x-rays, Dr. O'Neill, on June 12, 1976, made a full report disclosing the absence of silicosis or pneumoconiosis. The report was furnished to respondent who, as he had done in the Jarrell case, prepared a new report changing Dr. O'Neill's true report by removing the findings that the lung fields were free of infiltrative lesions and his impression that Adams had a normal chest. In place thereof, the following was inserted: "The lung fields show a bilateral reticulo nodular infiltrate in the mid and lower lung zones. Impression: Bilateral reticulo nodular infiltrate consistent with pneumoconiosis and/or silicosis, simple, stage 1/1 (p and q)."

In December, 1976, Dr. O'Neill furnished the law firm of Francis, Kazee & Francis a

copy of his true and unaltered report, and on February 4, 1977, respondent mailed to the Francis firm a copy of the altered report, representing it to be the true report of Dr. O'Neill. On March 28, 1977, the respondent hand delivered a letter to Mr. Kazee wherein he made mention of Dr. O'Neill's medical report which respondent allegedly had furnished prior thereto to Mr. Kazee. The report actually furnished by respondent to Mr. Kazee was the altered report. The name of Dr. O'Neill appears on the report. However, his name was signed by respondent or his secretary, acting pursuant to respondent's direction. This constituted a forgery and the report was nothing less than a fraud.

Respondent's attempt to justify his actions by asserting that his conduct is customary among attorneys who practice workers' compensation claims falls flat on its face. There is no evidence in the record to warrant such an assertion. However, be it so or not, there is no justification for an attorney to alter medical reports so as to report a nonexisting condition. The legal profession and the courts must recognize the mandate of exchanging truth, not lies or fabrications. The exchange of x-rays or copies of medical reports between counsel must be of unaltered originals or copies. Nothing less will suffice. Anything less than the truth constitutes a fraudulent act of such proportion as to constitute unethical and unprofessional conduct that would bring the bench and bar into disrepute.

Respondent charges that he is damaged by not having a speedy trial. He suggests that he was denied due process as guaranteed by both the United States Constitution and the Kentucky Constitution. A study and an analysis of the record disclose these charges to be without foundation. Respondent's denial that he mailed or caused to be mailed certain designated medical reports is not supported by the testimony. The transcript of testimony shows this denial to be erroneous and, as a matter of fact, absolutely contrary to the testimony.

It is written, "The moving finger writes; and, having writ, moves on: Nor all your piety nor wit shall lure it back to cancel half a line nor all your tears wash out a word of it." (Omar Khayyam). So let it be with Jimmy M. Hammond.

The recommendations of the Board of Governors are accepted. Respondent is permanently disbarred from the practice of law in the Commonwealth of Kentucky, and he is ordered to pay the costs of these proceedings.

All concur except CLAYTON, J., who dissents on the grounds that the punishment is too severe.